UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SONYA KENETTE BROWN,

      Plaintiff,

                                  Case No. 1:22-cv-1240

v.

                                  Hon. Hala Y. Jarbou

CITY OF ALBION, et al.,

      Defendants.

_____/

## OPINION

This is a civil rights action brought by Sonya Kennette Brown against the City of Albion and several of its current and former officials, including City Council Members Gleniane Reid, Shane Williamson, and Albert Smith; City Mayor David Atchison; Chief of Public Safety Scott Kipp; Deputy Chief of Public Safety Jason Kern; City Attorney Cullen Harkness; and Detective Nicole Wygant.[1]   Plaintiff raises several claims.   Among other things, she asserts that her indictment and prosecution for a misdemeanor in state court under the City's charter violated her First and Fourth Amendment rights.   Before the Court is Defendants' motion to dismiss the complaint for failure to state a claim (ECF No. 27).   For the reasons herein, the Court will grant the motion in part and deny it in part.

### I. BACKGROUND

According to the complaint, Plaintiff was a member of the Albion City Council between November 2016 and November 2019.  (Compl. ¶¶ 148, 325, ECF No. 1.)  The events about which

---

[1] Plaintiff also sued Bruce Nelson, a resident of the City, but Plaintiff has voluntarily dismissed Nelson.  (Notice of Voluntary Dismissal, ECF No. 25.)

she complains took place beginning in the latter part of 2018, after Latonya Rufus was appointed as Albion's new city manager.

### A. Plaintiff joins group chat with City Mayor and City Manager

In October 2018, then-City Mayor Garrett Brown (no relation) created a group chat on Facebook Messenger consisting of himself, Plaintiff, and then-City Manager Rufus.  (*Id.* ¶ 167.) Plaintiff, Brown, and Rufus were friends as well as co-workers.  They used this group chat to communicate with each other.  (*Id*. ¶ 163.)  All the chat messages discussed herein allegedly occurred outside of work during their personal time.  (*Id.* ¶ 177.)  Plaintiff used her personal phone for these communications.  (*Id.* ¶ 553.)

### B. Plaintiff tells City Manager Rufus to "get rid" of Defendant Kipp

Plaintiff believed that former City Manager Sheryl Mitchell was "part of a pattern of corruption" among City officials.  (*Id.* ¶ 204.)  On November 7, 2018, Plaintiff and Rufus discussed Mitchell's apparent decision to revise an employment contract for Defendant Kipp, the City's Chief of Public Safety.  Plaintiff believed that the revised agreement included a provision that Kipp would receive $460,000 in the event that he was "forced out and removed from office."  (*Id.* ¶ 210.) Plaintiff viewed this provision as evidence of Mitchell's corruption.

On November 9, 2018, Plaintiff, Brown, and Rufus were discussing what Rufus believed to be disrespectful behavior by Kipp.  Kipp was still using the title "Interim City Manager" in his email signature despite the fact that Rufus had been hired to fill the city manager position several weeks earlier.  (*Id.* ¶¶ 219-20.)  As part of that discussion, Plaintiff wrote to the group, "We got [you] Ms. Rufus!"  (Messenger Group Chat, ECF No. 2, PageID.104.)  Referring to Kipp, Plaintiff told Rufus, "Get rid of him! He's untrustworthy."  (*Id.*)

Later in the conversation, Plaintiff suggested that Kipp should be dismissed because of money he owed the City over an unpaid phone bill, saying, "Isn't the personal phone bill enough

2

to terminate Scott? . . .  Has the labor atty responded to your inquiry?"  Rufus responded, "Not yet."  (*Id.*, PageID.105.)  Plaintiff replied, "Scott needs to go, Ms. Rufus. One less worry! . . . Sheryl is gone and there's a new Sheriff in town!"  (*Id.*)  Plaintiff followed up on this issue again on November 30, telling Rufus, "[P]lease call [City Attorney] Cullen [Harkness].  He's a snake but he is not going to risk losing his license for Kipp, Sheryl, or anybody else.  He will give you your legal options on dealing with Kipp."  (*Id.*, PageID.112.)

### C. City discovers group chat messages during an investigation of Rufus.

In January 2019, there was an investigation into allegations that Rufus had misused City funds.  (Compl. ¶ 260.)  Mayor Atchison placed Rufus on leave and then Kipp confiscated her city-issued phone and computer.  Once Kipp was in possession of Rufus's work phone, City Attorney Harkness allegedly directed Kipp to search the phone.   Kipp obtained the passcode and then searched the phone.  (*Id.* ¶ 273.)  During an interview with investigators, Kipp contended that, although most of the messages and contacts in the phone had been deleted, he entered and accessed Rufus's Facebook Messenger account and saw the group chat exchanges between Plaintiff, Brown, and Rufus.  (Calhoun Cnty. Sheriff's Office Rep., ECF No. 8, PageID.140.)  Kipp took screenshots of these exchanges and sent them to the Calhoun County Sheriff's office.  (*Id.*)  Rufus eventually pleaded guilty to misdemeanor embezzlement.  (Compl. ¶ 284.)

That same month, City Council Member Smith allegedly filed a recall petition to remove Plaintiff from her position.  (*Id.* ¶ 285.)  Smith had apparently received a copy of the group chat messages from an unknown source.  Smith's petition asserted that Plaintiff had violated the City's charter by sending a message to Rufus directing her to remove Kipp.  (*Id.* ¶ 286.)  Smith later withdrew his petition.  (*Id.* ¶ 289.)

**D. Plaintiff's chat messages are made public.**

In February 2019, Plaintiff learned from Defendant Kern, who was Deputy Chief of Public Safety, that Kipp had accessed Plaintiff's group chat messages through a search of Rufus's phone. (*Id.* ¶ 294.)  Plaintiff alleges that Kipp's screenshots of those messages were "leaked" to local political blogger John Face, who posted them on his news website on February 25, 2019.  (*Id.* ¶¶ 290, 300.)

**E. Nelson files recall petition against Plaintiff.**

That same day, Albion resident Bruce Nelson filed a recall petition against Plaintiff.  The petition expressly referenced Plaintiffs "Get rid of him! . . . message directing City Manager Latonya Rufus to remove Scott Kipp as the head of Albion's Public Safety Department[.]" (Recall Pet., ECF No. 11, PageID.191.)  The petition asserted that this conduct had violated section 5.8 of the City's charter.  (*Id.*)  That section, titled "Restrictions on powers of the council," provided as follows:

> (a) The council members shall not individually direct the appointment or removal of any administrative officer or employee of the city and shall deal with the administrative service of the city only through the city manager, as to officers and employees made responsible to him.

> (b) There shall be no standing committees of the council.

(Compl. ¶¶ 346-47; Albion City Charter § 5.8, available at https://library.municode.com/ mi/albion/codes/code_of_ordinances.)

Plaintiff apparently contends that the disclosure of the Facebook messages, the recall petitions, and the news post about her were coordinated by Defendants Smith, Atchison, Kipp, and Nelson.

**F. Plaintiff publicly criticizes Kipp.**

In late February 2019, Plaintiff filed a complaint with the Michigan State Police alleging that Kipp had unlawfully accessed the messages on Rufus's phone.  (*See* Compl. ¶ 309.)  She announced the existence of this complaint at a City Council meeting on March 1, 2019.  *See* https://www.youtube.com/watch?v=izo74wWDcRM&t=98s.

**G. Kipp files complaint against Plaintiff.**

On August 13, 2019, Defendant Kipp lodged a complaint with the mayor accusing Plaintiff of making various false accusations about Kipp at City Council meetings, "harass[ing]" Kipp, and attempting to tarnish his reputation.  (Kipp Letter, ECF No. 13, PageID.198-199.)   In his complaint, Kipp referenced Plaintiff's Facebook messages that described him as "untrustworthy" and that called for his termination.  (*Id.*, PageID.198.)  Mayor Atchison shared Kipp's complaint with the City Council, recommending further review to determine "what if any action is appropriate."  (Atchison Letter, ECF No. 13, PageID.196-197.)  Plaintiff responded to Kipp's complaint by letter to the Council.  (Plaintiff Letter, ECF No. 3.)

**H. Plaintiff loses her recall election.**

In November 2019, Plaintiff lost her recall election to another Albion resident, Defendant Smith.  (Compl. ¶¶ 325-26.)

**I. City Council hires law firm to investigate Kipp's complaint.**

In early December 2019, the City Council voted to hire a local law firm to investigate Kipp's complaint about Plaintiff.  The City retained Timothy Gardner of the Thrun Law Firm, P.C., to produce a report (the "Thrun Report") examining whether Plaintiff had harassed Kipp. (Thrun Rep., ECF No. 14.)

The Thrun Report concluded that there was insufficient evidence that Plaintiff had harassed Kipp or defamed his character.  (*Id.*, PageID.201.)  It also concluded that Plaintiff's "Get rid of

him! He's untrustworthy" statements to then-City Manager Rufus had violated section 5.8 of the City Charter because those statements "had the practical effect of ordering [City Manager] Rufus to remove Chief Kipp from his position[.]"  (*Id.*, PageID.212.)

**J. City Council hires special prosecutor to prosecute Plaintiff.**

In March 2020, following the production of the Thrun Report, Defendants Smith, Reid, Williamson, and Atchison—members of Albion's City Council (and mayor, in Atchison's case)—allegedly voted to hire a special prosecutor to criminally prosecute Plaintiff for violating section 5.8 of the City Charter.  (Compl. ¶ 365.)  Section 2.5 of the City Charter provided criminal penalties for a violation of the Charter:

> Any person found guilty of an act constituting a violation of this charter may be punished by a fine which, in addition to court costs charged to him, shall not exceed five hundred dollars ($500.00) or imprisonment for not more than ninety (90) days, or both such fine and imprisonment, in the discretion of the court.

(Compl. ¶ 387.)

In May 2020, City Attorney Harkness allegedly contacted Detective Wygant and asked her to "generate a report number in reference to SONYA BROWN violating the Charter."  (*Id.* ¶ 369.)  Wygant then prepared an "incident report" containing Plaintiff's name and the offense she reportedly committed.  (Incident Rep., ECF No. 15.)  When describing the basis for the report, Wygant reported only that Harkness had asked her to generate a report number regarding Plaintiff's purported violation of the City Charter.  (*Id.*, PageID.248.)

**K. Atchison sues Plaintiff.**

In June 2020, Mayor Atchison filed a lawsuit against Plaintiff alleging that she had defamed him.  (Compl. ¶ 379.)  The lawsuit was later dismissed.  Plaintiff contends that the lawsuit was baseless and meritless, and that it was evidence of Atchison's use of the legal system to target his political enemies.  (*Id.* ¶¶ 380-81.)

**L. Plaintiff is prosecuted and acquitted.**

That same month, the special prosecutor signed a warrant for Plaintiff's criminal prosecution.  A Calhoun County circuit judge approved the warrant and Plaintiff was arraigned. (*Id*. ¶¶ 383-84.)  Plaintiff was tried on July 27, 2022, and she was acquitted the same day.  (*Id*. ¶¶ 422-23.)

**M. Plaintiff files this lawsuit.**

Plaintiff asserts several claims based on the foregoing events.  In Count I of her complaint, Plaintiff claims that Defendants violated the First Amendment.  Specifically, Plaintiff contends that Defendants retaliated against her for her protected conduct when:  (1) Kipp searched Rufus's phone; (2) Defendants initiated recall petitions against Plaintiff; (3) the City Council voted to investigate Plaintiff; (4) the City Council hired a prosecutor to criminally prosecute Plaintiff; and (5) Kipp filed a "baseless" defamation complaint against Plaintiff.  (*See* Compl. ¶¶ 433-39.)

In Count II of the complaint, which overlaps with Count I, Plaintiff claims that Defendants violated the First Amendment by retaliating against her for her Facebook messages and for complaining about the search of Rufus's cell phone.  Specifically, Plaintiff contends that Defendants retaliated by investigating and criminally prosecuting Plaintiff.

In Count III, Plaintiff contends that the City is liable for a violation of Plaintiff's constitutional rights because of an unconstitutional policy embodied by section 5.8 of the City Charter and because of a "policy" adopted by the City Council, the City's decisionmakers, to prosecute Plaintiff for her protected speech.  Plaintiff also claims that the City is liable for failing to train its employees in such a manner as to avoid violating Plaintiff's First and Fourth Amendment rights.

In Count IV, Plaintiff contends that Defendants Smith, Reid, Williamson, and Atchison violated her rights under the Fourth Amendment by initiating a criminal prosecution against her

that was not founded on probable cause.  And she contends that Defendants Kipp and Kern violated her Fourth Amendment rights by participating in or acquiescing to an unlawful search of Rufus's cell phone.

In Count V, Plaintiff asserts that Defendants conspired to deprive her of her rights, in violation of 42 U.S.C. §§ 1983, 1985.[2]

In Count VII,[3] Plaintiff contends that section 5.8 of the City Charter is unconstitutional on its face and as applied to Plaintiff.  She seeks a declaration that it is unconstitutional and an injunction preventing Defendants from enforcing it against her.

In Count VIII, Plaintiff contends that Defendants adopted an unconstitutional policy of searching the cell phones of employees without a warrant.  She seeks a declaration that this policy is unconstitutional and an injunction preventing Defendants from searching the cell phones of its employees without a warrant.

In addition to the injunctive and declaratory relief mentioned above, Plaintiff seeks damages for the violations asserted in Counts I to V.

## II. DISMISSAL STANDARD

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678

---

[2] Plaintiff asserts that she is abandoning her conspiracy claim under 42 U.S.C. § 1985 (Pl.'s Resp. Br. 11, ECF No. 41), so the Court will dismiss that claim.

[3] There is no Count VI in the complaint.  Plaintiff contends this was a typographical error and that she meant to label Count VII as Count VI.  For clarity's sake, the Court will retain the labeling used in the complaint.

(2009) ("Threadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The Court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

Assessment of the complaint under Rule 12(b)(6) must ordinarily be undertaken without resort to matters outside the pleadings; otherwise, the motion must be treated as one for summary judgment under Rule 56.  *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010).  "However, a court may consider exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016).

## III. ANALYSIS

### A. Statute of Limitations

Defendants argue that some claims are untimely.  The statute of limitations is an affirmative defense.  Generally, a plaintiff need not plead the absence of an affirmative defense in the complaint, which only requires "a short and plain statement of the claim." Fed R. Civ. P. 8(a).  "For this reason, a motion under Rule 12(b)(6), which considers only the allegations in the complaint, is generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations." *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012).  On the other hand, "[i]f the allegations . . . show that the relief is barred by the applicable statute of limitations, the

complaint is subject to dismissal for failure to state a claim[.]" *Id.* (quoting *Jones v. Bock*, 549 U.S. 199, 216 (2007)).

There is no statute of limitations in 42 U.S.C § 1983; therefore, "federal courts must borrow the statute of limitations governing personal injury actions in the state in which the section 1983 action was brought." *Banks v. City of Whitehall*, 344 F.3d 5050, 553 (6th Cir. 2003) (citing *Wilson v. Garcia*, 471 U.S. 261, 275-76 (1985)). In Michigan, there is a three-year limitations period for personal injury claims. Mich. Comp. Laws § 600.5805(2). Thus, that limitations period applies to Plaintiff's claims under § 1983.

Although state law is used to determine the length of the statute of limitations, "the accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007). For § 1983 claims, "[a] complete cause of action arises 'when the plaintiff knows or has reason to know of the injury which is the basis of his action.'" *Beaver St. Invs., LLC v. Summit Cnty.*, 65 F.4th 822, 826 (6th Cir. 2023) (quoting *Kuhnle Bros., Inc v. Cnty. of Geauga*, 103 F.3d 516, 520 (6th Cir. 1997)).

Plaintiff filed this suit on December 30, 2022. Consequently, any claims that accrued before December 30, 2019, are untimely.

### 1. Retaliation claims

Plaintiff's retaliation claims are time-barred to the extent the alleged retaliation occurred on or before December 30, 2019. Thus, any retaliation claims based on the following events are barred: (1) the search of Rufus's phone; (2) the disclosure of Plaintiff's Facebook messages to the public; (3) Kipp's complaint against Plaintiff; and (4) the recall petitions. Plaintiff knew or had reason to know of the injuries giving rise to her retaliation claims when these events occurred. Accordingly, the Court will dismiss the retaliation claims based on these events.

On the other hand, her retaliation claims are not time-barred to the extent they rely upon the investigation of Plaintiff or the prosecution of Plaintiff.  Although the City Council's decision to investigate Plaintiff occurred a few weeks before December 30, 2019, it is not clear from the complaint when Plaintiff knew or should have known about that decision. Thus, at this stage, a retaliation claim based on the investigation is timely.  By contrast, the vote to hire a prosecutor and the prosecution itself occurred after December 30, 2019.  Thus, a retaliation claim related to the prosecution is also timely.

### 2. Malicious Prosecution claim

Plaintiff's malicious prosecution claim accrued when the proceedings against her resolved in her favor.  *See McDonough v. Smith*, 139 S. Ct. 2149, 2156 (2019).  This claim is timely because Plaintiff was acquitted in 2020.

### 3. Fourth Amendment search claim

Plaintiff's Fourth Amendment claim regarding the search of Rufus's phone is untimely because Plaintiff learned about that search in February 2019, more than three years before she filed her complaint.  Therefore, the Court will dismiss Plaintiff's Fourth Amendment claim related to the search of Rufus's phone.

### 4. Conspiracy claims

A claim arising from a conspiracy does not accrue until the last overt act of the conspiracy has been carried out.  *N. Ky. Tel. Co. v. S. Bell Tel. & Tel. Co.* 73 F.2d 333 (6th Cir. 1934); *McIlwain v. Dodd*, 2022 WL 17169006, at *4 (6th Cir. 2022) (discussing the application of "the last overt act" doctrine to civil conspiracy claims). Plaintiff was not charged with a crime until 2020.  To the extent Plaintiff alleges Defendants conspired to prosecute her, that claim is timely.

Although the City Council's decision to investigate Plaintiff occurred before December 30, 2019, it is not clear from the complaint whether Plaintiff knew or should have known about that

decision.  Thus, the Court will not dismiss as time-barred any claim that Defendants conspired to investigate her.

However, to the extent Plaintiff argues that Defendants conspired to violate her constitutional rights by searching Rufus's phone, disclosing Plaintiff's messages, or initiating the recall petitions, those conspiracy claims are barred by the statute of limitations.  The final acts in furtherance of those alleged conspiracies were the search, the disclosure, and the recall petitions, respectively, all of which occurred before December 30, 2019.  Thus, those conspiracy claims will be dismissed because they accrued more than three years before Plaintiff filed her complaint.

### B. Count I & II: First Amendment Retaliation

In Count I, Plaintiff raises a claim under 42 U.S.C. § 1983, asserting that Defendants violated her rights under the First Amendment to the U.S. Constitution and Article 1, Section 5 of the Michigan Constitution.

As a preliminary matter, § 1983 does not provide a remedy for violations of state law.  *See Conley v. Williams*, No. 93–5524, 1994 WL 326001, at *2 (6th Cir. July 5, 1994) ("While the states are, of course, free to enact laws that are more protective of individual rights than the United States Constitution, a mere violation of such a state law will not establish a proper claim under § 1983.").  "Unless a deprivation of some federal constitutional or statutory right has occurred, § 1983 provides no redress[.]"  *Lewellen v. Metro. Gov't of Nashville*, 34 F.3d 345, 347 (6th Cir. 1994).  Thus, Plaintiff does not state a claim under § 1983 to the extent she relies solely on a violation of the Michigan constitution.

To state a claim for retaliation in violation of the First Amendment, Plaintiff must allege "(1) [she] engaged in protected conduct; (2) an adverse action was taken against [her] that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at

12

least in part by [P]laintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

### 1. City Council Investigation

Plaintiff claims that the City Council voted to investigate her in retaliation for her protected conduct. Defendants note that there is no clearly established law that would have alerted them that investigating Kipp's complaint was an adverse action. Similarly, the Court cannot discern why a decision to investigate Plaintiff's conduct in response to Kipp's complaint would be an adverse action, let alone one that was motivated by Plaintiff's protected conduct. The investigation itself had no impact on Plaintiff, who was no longer part of the City Council when it initiated the investigation. *Cf. Ehrlick v. Kovack*, 710 F. App'x 646, 650 (6th Cir. 2017) ("[W]e have previously found that being placed on paid administrative leave while an investigation is conducted into suspected wrongdoing is not an adverse action."). Accordingly, Plaintiff does not state a retaliation claim to the extent she relies on the City Council's decision to investigate her as an adverse action.

### 2. Retaliatory Prosecution

Where the alleged retaliatory action is a criminal prosecution, a plaintiff must "plead[] and prove[]" the absence of probable cause. *Hartman v. Moore*, 547 U.S. 250, 266 (2006); *see Marcilis v. Twp. of Redford*, 693 F.3d 589, 604 (6th Cir. 2012) ("[W]here there is probable cause to file a criminal complaint, a plaintiff will be unable to prevail on [a] retaliation claim."); *see also Hartman v. Thompson*, 931 F.3d 471, 484 (6th Cir. 2019) (applying probable cause requirement to a retaliatory arrest). Plaintiff fails to meet this requirement.

"Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. McClain*, 444 F.3d 556, 562 (6th Cir. 2005) (quoting *United States v. Ferguson*, 8 F.3d 385, 392 (6th Cir. 1993)). "Because probable

13

cause 'deals with probabilities and depends on the totality of the circumstances,' it is 'a fluid concept' that is 'not readily, or even usefully, reduced to a neat set of legal rules[.]'" *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018) (quoting *Illinois v. Gates*, 462 U.S. 213, 232 (1983)). It "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *McClain*, 444 F.3d at 563 (quoting *Gates*, 462 U.S. at 243 n.13). When the historical facts are undisputed, a probable cause determination is a question of law for the Court to decide. *Gerics v. Trevino*, 974 F.3d 798, 805 (6th Cir. 2020).

Here, there is no question that Plaintiff told City Manager Rufus to "get rid" of Kipp in a Facebook message. There is also no question that this statement was the basis for the decision to prosecute Plaintiff. (*See* Compl. ¶¶ 224, 551.) This statement provided probable cause for Plaintiff's prosecution. On its face, the statement appeared to instruct the City Manager to terminate Kipp. Consequently, the statement provided reasonable grounds for believing that Plaintiff, a member of the City Council, had directed Kipp's removal, in violation of section 5.8 of the City Charter.

Plaintiff insists that probable cause was lacking in light of the totality of the circumstances, including the full history and context of her statement, which she made in a private, informal conversation outside of work using her personal device. In that same conversation, she complained about Mitchell and Kipp and advised Rufus to seek the advice of counsel. But while the full context for the conversation casts her statement as informal advice rather than an official directive, it does not eliminate the existence of probable cause. *See United States v. Terry*, 522 F.3d 645, 649 (6th Cir. 2008) ("Although innocent  explanations for some or all of these facts may exist, this possibility does not render the . . . determination of probable cause invalid." (quoting *United States v. Martin*, 289 F.3d 392, 400 (6th Cir. 2002))). "[P]robable cause does not require 'near certainty,'

only a 'fair probability.'" *Id.* (quoting *Martin*, 589 F.3d at 400).  Furthermore, the full chat history

hurts Plaintiff in this regard as much or more than it helps her.  It reveals that she repeatedly

advocated for Kipp's removal, saying: "Isn't the personal phone bill enough to terminate Scott?";

"Scott needs to go, Ms. Rufus. One less worry!"; and "Ms. Rufus, please call [the City

Attorney] . . . [h]e will give you your legal options on dealing with Kipp."  These statements all

suggest that Plaintiff wanted Rufus to remove Kipp, which further suggests that Plaintiff's "get rid

of him" statement was a directive she expected Rufus to act on, rather than merely an expression

of Plaintiff's opinion about Kipp.  Thus, the full chat history suggests that she had, in fact, directed

Kipp's removal, in violation of section 5.8.  Accordingly, even after considering the totality of the

circumstances, Defendants had reasonable grounds for believing that Plaintiff had violated the City

Charter.

  Plaintiff also contends that probable cause was lacking because Kipp obtained the chat

messages through a purportedly unlawful search.  She provides no authority for this argument.

Indeed, it is not clear why Kipp's actions would have deprived the City Council or the prosecutor

of the ability to rely on the messages when assessing the existence of probable cause.

  Next, Plaintiff argues that her statements were protected by the First Amendment, and as

such, they could not provide a basis for probable cause.  On this point, Plaintiff relies upon *Leonard*

*v. Robinson*, 477 F.3d 347 (6th Cir. 2007), in which the defendant arrested the plaintiff for

"disorderly person" and "obscenity" for saying "God damn" when addressing a township board at

a board meeting.  *Id.* at 351.  The plaintiff filed suit, contending that the arrest was motivated by

her protected speech.  The existence of probable cause potentially defeated the claim for retaliatory

arrest, but the court held that the defendant could not rely upon an obscenity statute to establish

probable cause because that statute had been invalidated by the Michigan Court of Appeals before

the arrest.  *Id.* at 358.  Similarly, the defendant could not rely upon a different statute that the Michigan Court of Appeals had already held was overbroad.  *Id.* at 360.  Those are not the circumstances here.  Plaintiff does not contend that the relevant portions of the City Charter had been invalidated by courts before her arraignment or prosecution.

When examining another state law that might have served as a basis for probable cause, the Court of Appeals in *Leonard* concluded that the law did not suffice because it regulated profanity, and "[p]rohibiting [a person] from coupling an expletive to his political speech is clearly unconstitutional."  *Id.* at 360.  Plaintiff does not press a similar argument here.  Indeed, it is not clearly unconstitutional to prosecute a city council member for telling a city manager to remove another city employee, which is what Plaintiff appears to have done here.

Plaintiff also relies upon *Sandul v. Larion*, 119 F.3d 1250 (6th Cir. 1997), in which a police officer arrested the plaintiff under a "disorderly conduct" ordinance for shouting "f—k you" and extending his middle finger to a group of protestors.  *Id.* at 1252.  The plaintiff sued the officer, claiming that the officer lacked probable cause to make the arrest.  The Court of Appeals agreed, noting that the plaintiff's words and actions were clearly protected by the First Amendment and that "protected speech cannot serve as the basis for a violation of any of the . . . ordinances at issue."  *Id.* at 1256.  Similarly, Plaintiff contends that, because her "Get rid of him!" statement was protected speech, it cannot serve as the basis for probable cause.

Plaintiff's reliance on *Sandul* is misplaced.  Section 5.8 of the Albion City Charter, as well Defendants' decision to prosecute Plaintiff, focused on Plaintiff's *conduct*, not any protected speech.  As Plaintiff herself states, "the plain language" of section 5.8 "discusses a directive, which is an action and not simply words."  (Pl.'s Resp. Br. 36.)  Put another way, section 5.8 of the Charter did not target speech or protected conduct as such.  Instead, it prohibited a city council

member from ordering a particular employment action.  Thus, Plaintiff's "Get rid of him!" statement potentially violated the Charter not because of its expressive content, but because of the conduct it solicited.  Although a directive typically requires speech of some sort, the Charter's restriction on such speech is incidental to its prohibition of the directive itself.  "[I]t has never been deemed an abridgement of freedom of speech . . . to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed."  *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502 (1949). "Where the government does not target conduct on the basis of its expressive content, acts are not shielded from regulation merely because they express a discriminatory idea or philosophy."  *R.A.V. v. City of St. Paul*, 505 U.S. 377, 390 (1992).  Similarly, Plaintiff's "get rid of him" statement to Rufus was not shielded from prosecution merely because she made it in the context of expressing complaints about Kipp.  Indeed, she could have made those same complaints without instructing Rufus to terminate Kipp.

Plaintiff argues that the rationale in *Giboney* only applies to valid criminal statutes, and that section 5.8 was not a criminal statute at all.  Plaintiff notes that section 5 of the City Charter contained no criminal provisions.  However, as Plaintiff indicates in her complaint, section 2.5 of the Charter imposed criminal penalties on individuals who violated the City Charter.  That section gave Defendants the legal basis for instigating a criminal prosecution of Plaintiff.  Plaintiff argues that it would be absurd to interpret section 2.5 as criminalizing any violation of the City Charter, such as a failure to comply with the provision requiring the City Council to "meet on the first Monday in December following each regular city election."  (*See* City Charter § 5.3.)  Regardless, it was not absurd to criminalize a violation of section 5.8, which prohibited specific conduct by a specific employee.

Plaintiff further argues that probable cause was lacking because she did not "direct" anything.  She interprets the word "direct" in section 5.8 to require an action that effected a change in Kipp's employment.  And because she did not impact Kipp's employment, she argues that her "get rid of him" statement did not fall under the Charter's prohibition.  The Court is not persuaded by this argument.  Not all directions are followed.  The Charter prohibited the direction itself.  It did not require that the direction be implemented for the prohibition to apply.  Indeed, the language of section 5.8 suggests that its purpose was to prevent council members from attempting to exert their authority individually rather than as part of the council as a whole.  As Defendants point out, other city charters contain similar prohibitions.  For instance, the City of Lansing's charter provides that its council members "shall give no direct *orders* to any other City officer or employee . . . [e]xcept as may otherwise be provided by law or this Charter[.]"[4]  Lansing City Charter § 3-207 (Nov. 20, 2023) (emphasis added), available at https://library.municode.com/mi/lansing/codes/code_of_ordinances.  That charter also provides that a violation of its provisions is a criminal offense.  *Id.* § 1-501.  Thus, whether or not Rufus acted on Plaintiff's direction, Plaintiff's "get rid of him" statement to Rufus potentially thwarted the purpose of such provisions by improperly exerting her authority outside her proper role on the full council.

Plaintiff also contends that section 5.8 was invalid because it was unconstitutionally vague and overbroad.  Defendants do not address this specific argument, but even if Plaintiff is correct, it would not change the outcome as to the individual defendants because they would be entitled to qualified immunity.  They reasonably interpreted and relied on section 5.8 as the basis for probable cause.  "[T]he Supreme Court has *never* denied qualified immunity to a public official who enforced a properly enacted statute that no court had invalidated."  *Freed v. Thomas*, 81 F.4th 655,

---

[4] The Court can take judicial notice of Lansing's city charter.

18

660 (6th Cir. 2023) (quoting *Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 441 (6th Cir. 2016)). To be sure, "[s]ome laws may be 'so grossly and flagrantly unconstitutional' that any reasonable officer would decline to enforce them." *Citizens in Charge*, 810 at 442 (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 38 (1979)). But section 5.8 is not one of those laws.

In summary, Defendants had probable cause to prosecute Plaintiff, which defeats her retaliation claim stemming from that prosecution. Accordingly, for all the foregoing reasons, the Court will dismiss the retaliation claims in Counts I and II.

### C. Count III: *Monell* Liability

Plaintiff contends that the City is liable for her injuries. The standard for establishing municipal liability under § 1983 against a city or other municipal entity is different from that for establishing liability against an individual government official. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). "A municipality cannot be held liable simply because one of its employees has committed a constitutional violation." *Andrews v. Wayne Cnty.*, 957 F.3d 714, 721 (6th Cir. 2020) (citing *Monell*, 436 U.S. at 694). Instead, "a plaintiff may hold a local entity . . . liable under § 1983 only if the entity's own unconstitutional policy or custom caused the plaintiff's injury." *Pineda v. Hamilton Cnty.*, 977 F.3d 483, 494 (6th Cir. 2020) (internal quotation marks omitted). In other words, "[a] plaintiff must show that the *entity's* unconstitutional custom—not just the *employee's* unconstitutional action—caused the plaintiff's injury." *Id.* at 495. The first step in a municipal liability claim is to identify the custom or policy at issue.

### 1. Decision to Prosecute Plaintiff

Plaintiff claims that the City Council's decision to prosecute her was an unconstitutional policy adopted by the City to retaliate against her for engaging in protected speech. As discussed above, however, Plaintiff's retaliation claim fails because her complaint indicates that Defendants

had probable cause to prosecute her.  That logic applies to the City as well as the individual defendants.

### 2. Section 5.8 of the City Charter

Plaintiff also claims that section 5.8 of the City Charter was an unconstitutional policy of the City and that its enforcement against her violated her constitutional rights.  She claims that this provision was overbroad, which compromised her First Amendment rights.  (Compl. ¶ 478.)  She also claims that it was vague, leading to arbitrary enforcement in violation of her due process and First Amendment rights. (*Id.* ¶ 485.)

Defendants do not address these assertions.  Instead, they simply argue that Plaintiff's *Monell* claim fails because she fails to state a claim against the individual defendants.  Defendants cite no authority for this proposition.  While it is true that the Court of Appeals has broadly stated that "the imposition of municipal liability is contingent on a finding of individual liability under § 1983," that principle does not apply in all instances.  *See Winkler v. Madison Cnty.*, 893 F.3d 877, 900 (6th Cir. 2018).  Indeed, "there are . . . scenarios when no officer may have acted unconstitutionally, but the municipality has nonetheless inflicted constitutional harm on a victim." *Grote v. Kenton Cnty.*, 85 F.4th 397, 414 (6th Cir. 2023).  The prosecution of an individual under an unconstitutionally vague or overbroad municipal ordinance might be one such claim, particularly where the individuals involved are entitled to qualified immunity.

### 3. Failure to Train

Another policy alleged by Plaintiff is that the City failed to train its employees with regard to First and Fourth Amendment rights.  Because Defendants do not address this claim, the Court will not do so either.

In short, the Court is not persuaded that Plaintiff fails to state a *Monell* claim.

20

### D. Count IV: Malicious Prosecution

"Individuals have a clearly established Fourth Amendment right to be free from malicious prosecution." *King v. Harwood*, 852 F.3d 568, 582-83 (6th Cir. 2017).  To establish a claim for malicious prosecution, Plaintiff "must show, at a minimum, that there is no probable cause to justify an arrest or a prosecution." *Voyticky v. Vill. of Timberlake*, 412 F.3d 669, 675 (6th Cir. 2005).  As discussed above, Plaintiff's complaint indicates that Defendants had probable cause to justify the criminal proceedings against her.  Although Plaintiff points to the fact that a jury acquitted her, an acquittal does not mean that Defendants lacked probable cause.  *See Harris v. United States*, 422 F.3d 322, 327 (6th Cir. 2005) (noting that "not every failed criminal prosecution will sustain a subsequent malicious-prosecution suit").  Accordingly, the Court will dismiss Count IV.

### E. Count V:  Conspiracy

Count V expressly identifies 42 U.S.C. § 1985 as the basis for Plaintiff's conspiracy claim, but it also cites case law discussing conspiracies under 42 U.S.C. § 1983.  (*See* Compl. ¶ 571 (discussing *Hooks v. Hooks*, 771 F.2d 935 (6th Cir. 1985).)  Thus, the Court construes the complaint as asserting conspiracy claims under both § 1983 and § 1985.  Plaintiff indicates that she is withdrawing her claim under § 1985, so the Court will dismiss that claim.  After dismissal of some conspiracy claims as untimely for reasons discussed above, the remaining conspiracy claims are those that concern conspiracies to investigate Plaintiff and to prosecute her without probable cause, in retaliation for her protected conduct.

As discussed above, however, Plaintiff does not state viable retaliation claims regarding the investigation or the prosecution.  In addition, she does not state a viable malicious prosecution claim.  Without an underlying constitutional violation, there can be no civil conspiracy claim against the individuals involved.  *See Bauss v. Plymouth Twp.*, 233 F. App'x 490, 496 (6th Cir.

2007) ("To establish a 'conspiracy' under a Section 1983 claim, a plaintiff must first demonstrate a constitutional deprivation.").[5]   Accordingly, the Court will dismiss the remaining conspiracy claims in Count V.

### F. Counts VII & VIII:  Declaratory and Injunctive Relief

Counts VII and VIII appear to seek only prospective declaratory and injunctive relief.  In Count VII, Plaintiff seeks an order declaring Section 5.8 unconstitutional and preventing the City from enforcing it as a criminal offense in the future.  (Compl. ¶¶ 587-88.)  In Count VIII, Plaintiff asks for an order "declaring the policy and custom of searching cellular phones of employees without a search warrant to be unconstitutional," and enjoining Defendants from searching the cellular phones of its employees without a warrant.  (*Id.* ¶¶ 591-92.)  Plaintiff lacks standing to pursue such relief.

In order to obtain prospective declaratory or injunctive relief, Plaintiff must show that there is an "actual controversy" within the meaning of Article III of the Constitution.  *Steffel v. Thompson*, 415 U.S. 452, 458 (1974).  Although Plaintiff has standing to sue for past harms, she must "demonstrate separate standing to seek declaratory or injunctive relief focused on prospective harm."  *Barber v. Miller*, 809 F.3d 840, 849 (6th Cir. 2015).  To demonstrate such standing, Plaintiff "must show . . . that it is 'likely, as opposed to merely speculative, that the injury [she suffered] will be redressed by a favorable decision.'"  *Id.* at 848-49 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  Put another way, Plaintiff must allege facts showing that "threatened injury is certainly impending, or there is a substantial risk that the harm will

---

[5] To the extent Plaintiff asserts a conspiracy to prosecute her under a vague and overbroad statute, resulting in violation of her constitutional rights, Defendants would be entitled to qualified immunity for such a claim for the reasons discussed above in Section III.B.2.

occur." *Id.* at 849 (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 156 (2014)) (internal quotation marks omitted).

### 1. Count VII

Count VII is focused on section 5.8 of the City Charter, which prohibits members of Albion's City Council from directing the appointment or removal of officers or employees of the City.  To demonstrate standing to enjoin enforcement of section 5.8, Plaintiff must show that she faces a "credible threat of prosecution" for violating that provision.  *See Block v. Canepa*, 74 F.4th 400, 409 (6th Cir. 2023).  Plaintiff cannot make that showing because she is no longer a member of the City Council.  Thus, the provision does not apply to her, which makes any risk of future harm from enforcement of the City Charter purely speculative.  Accordingly, Count VII will be dismissed for lack of standing.[6]

### 2. Count VIII

Count VIII focuses on the City's alleged "policy and custom of searching phones of employees without a search warrant."  (Compl. ¶ 591.)  Count VIII fails for similar reasons as Count VII.  Any risk of harm that Plaintiff faces is not imminent or likely because the alleged policy does not apply to her.  She is no longer a City employee.  Consequently, the Court will dismiss Count VIII for lack of standing.

### IV. CONCLUSION

For the reasons stated above, the Court will grant Defendants' motion to dismiss in part and deny it in part.  The Court will dismiss all claims and Defendants other than Count III against the City.  That claim survives solely to the extent Plaintiff contends that (1) the City violated her

---

[6] To be clear, to the extent Plaintiff claims her constitutional rights were violated by past enforcement of an unconstitutionally vague or overbroad ordinance against her, which is one of the issues in Count III, she has standing to assert that claim.

constitutional rights by enforcing an unconstitutionally vague and overbroad ordinance against her, and (2) the City had a policy of failing to train its employees regarding First and Fourth Amendment rights.

       The Court will enter an order consistent with this Opinion.

Dated: December 4, 2023             /s/ Hala Y. Jarbou
                                       HALA Y. JARBOU
                                       CHIEF UNITED STATES DISTRICT JUDGE