UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SONYA KENETTE BROWN,

    Plaintiff,

v.

CITY OF ALBION, et al.,

    Defendants.
_____/

Case No. 1:22-cv-1240

Hon. Hala Y. Jarbou

## **OPINION**

Before the Court is Plaintiff's motion seeking reconsideration of the dismissal of some of her claims (ECF No. 54) and Defendants' motion for summary judgment (ECF No. 66). The Court will deny the motion for reconsideration and grant the motion for summary judgment.

### I. BACKGROUND

When Plaintiff was a member of the City of Albion's City Council, she sent text messages to the city manager encouraging her to "get rid of" the city's chief of public safety, Scott Kipp. However, the city's charter prohibited council members from individually directing the appointment or removal of city employees. The charter also provided for criminal penalties for acts violating the charter. After Kipp complained to the mayor that Plaintiff was harassing him, the city council hired a law firm to investigate Plaintiff. The law firm did not find sufficient evidence of harassment, but it concluded that Plaintiff had violated the charter by directing the city manager to fire Kipp. The city council then hired a special prosecutor to prosecute Plaintiff for violating the charter. A prosecutor did so and she was acquitted.

In a previous opinion, the Court granted Defendants' motion to dismiss some of Plaintiff's claims. Among other things, the Court concluded that the city had probable cause to order the

prosecution of Plaintiff, which defeated her claim of retaliatory prosecution. The Court dismissed her retaliatory investigation claim because the investigation was not an adverse action. The Court dismissed other claims as untimely. After dismissal of these claims, the only claims remaining were those against the city in Count III of the complaint.

Plaintiff has filed a motion for reconsideration of the Court's opinion and order of dismissal. Defendants have filed a motion for summary judgment on the remaining claims.

## II. RECONSIDERATION

Under the Court's local rules,

> motions for reconsideration which merely present the same issues ruled upon by the court shall not be granted. The movant shall not only demonstrate a palpable defect by which the court and the parties have been misled, but also show that a different disposition of the case must result from a correction thereof.

W.D. Mich. LCivR 7.4(a).[1]

In seeking reconsideration, Plaintiff now contends that she also asserts a viable claim for retaliatory arrest. Defendants disagree. First, they argue that the complaint does not contain such a claim. For instance, Count I of the complaint, which is titled "First Amendment Violation," asserts that Defendants "illegally investigat[ed] and prosecut[ed] Plaintiff for [her] protected speech." (Compl. ¶ 443, ECF No. 1.) That same count mentions that there was an arrest warrant issued in connection with that prosecution (*id.* ¶ 441), but it does not contend that Defendants arrested her in retaliation for her protected speech.

Similarly, Count II of the complaint, which is titled "First Amendment Retaliation," contends that Defendants retaliated against Plaintiff through their "unlawful investigation and criminal prosecution against Plaintiff." (*Id.* ¶ 465.) That count does not mention Plaintiff's arrest.

---

[1] Plaintiff also seeks to alter or amend judgment under Rule 59(e) of the Federal Rules of Civil Procedure, but that rule only applies where there is a judgment. The Court has not entered a judgment.

2

Count III of the complaint is titled "*Monell* liability" and is focused on Defendants' decision to investigate and prosecute Plaintiff, as well as the allegedly warrantless search of a cell phone that did not belong to Plaintiff. (*Id.* ¶¶ 516, 524.) It does not mention Plaintiff's arrest.

Count IV of the complaint is titled "Malicious Prosecution." (Compl. 80.) In that count, Plaintiff contends that Defendants "conspired . . . to investigate and criminally prosecute Plaintiff," and that the prosecution lacked probable cause. (*Id.* ¶¶ 548, 555.) She mentions that Defendant Wygant "procured an arrest warrant for Plaintiff" (*id.* ¶ 550), but she does not contend that Wygant secured the warrant for retaliatory reasons.

On the other hand, in a section of the complaint preceding all the counts for relief, Plaintiff contends that "Defendants *arrested* and maliciously prosecuted Plaintiff, without probable cause, and *in retaliation for Plaintiff's protected speech*, in violation of the First Amendment and Fourth Amendment." (*Id.* ¶ 118 (emphasis added).) While Plaintiff's complaint is not a model of clarity, the Court recognizes that the primary purpose of a complaint is to allege facts rather than specific legal theories. *See Lunneen v. Vill. of Berrien Springs*, Nos. 22-2044, 22-2046, 2023 WL 6162876, at *13 (6th Cir. Sept. 21, 2013) (noting that "a complaint need not expressly plead legal theories"; "only after the moving party seeks summary judgment [must] a responding party . . . 'come forward with every legal theory' on which he relied" (quoting *Nat'l Credit Union Admin. v. Mich. Nat'l Bank of Det.*, 771 F.2d 154, 161 (6th Cir. 1985))). Construing the complaint generously, Plaintiff asserts a claim for retaliatory arrest as well.

Nevertheless, the Court agrees with Defendants that this claim is not a viable one. The Court concluded that Defendants had probable cause to prosecute and arrest Plaintiff, which defeats her malicious prosecution claim. Probable cause "should generally defeat" a claim for

3

retaliatory arrest. *Nieves v. Bartlett*, 139 S. Ct. 1715, 1727 (2019). However, Plaintiff argues that it does not defeat her claim, citing *Lozman v. City of Riviera Beach*, 585 U.S. 87 (2018).

In *Lozman*, the plaintiff was an outspoken critic of the city where he lived. *Id.* at 91. He regularly criticized the city during city council meetings and he filed a lawsuit against the city. At a closed-door meeting of the city council to discuss the plaintiff's lawsuit, a member of the council suggested that the city should use its resources to "intimidate" the plaintiff and others who had sued the city. *Id.* Later that year, when the plaintiff attended a city council meeting to give public remarks, a councilmember told him to stop speaking and ordered his arrest. *Id.* at 92. The plaintiff sued the city, claiming that the city's policymakers ordered his arrest under a plan or policy to retaliate against him for his protected speech and protected conduct.[2] The Supreme Court concluded that, because the plaintiff was not suing the arresting officer, and because the plaintiff's claim involved an allegedly "premeditated plan" by the city to intimidate him for his protected speech, he did not need to prove the absence of probable cause to assert his claim. *Id.* at 101.

As part of its rationale, the Court in *Lozman* noted that the plaintiff's claim was not a "typical retaliatory arrest claim" involving an "on-the-spot decision by an individual officer[.]" *Id.* at 100. In such cases, "it can be difficult to discern whether an arrest was caused by the officer's legitimate or illegitimate consideration of speech." *Id.* at 98; *accord Nieves v. Bartlett*, 139 S. Ct. 1715, 1724 (2019). Instead, the claim in *Lozman* involved an arrest instigated by the city's councilmembers "for prior, protected speech bearing little relation to the criminal offense for which the arrest is made." *Id.* at 100. In this "unique class" of cases, the causation problem is "not of the same difficulty," so a court should apply the test in *Mt. Healthy City Board of Education*

---

[2] When suing a city or other local governmental entity under § 1983, the plaintiff must establish that the "harm was caused in the implementation of 'official municipal policy.'" *Lozman*, 585 U.S. at 95 (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)).

4

*v. Doyle*, 429 U.S. 274 (1977) and decide whether "retaliation was a substantial or motivating factor behind the [arrest.]" *Lozman*, 585 U.S. at 97. The Court noted, however, that such a case would require "objective evidence of a policy motivated by retaliation to survive summary judgment." *Id.* at 101. In *Lozman*, the plaintiff met that requirement by relying on a transcript of the closed-door meeting by the city council as well as video of his arrest. *Id*.

Plaintiff's case does not fall within the "unique class" set forth in *Lozman*. She does not allege any facts from which to infer a policy motivated by retaliation. Unlike in *Lozman*, there is no allegation that, before Plaintiff's arrest, the City of Albion's council members suggested intimidating or retaliating against her for her protected conduct. Moreover, unlike that case, the City of Abion's council members did not order her arrest while she was engaged in protected conduct. In fact, there is no allegation that the City of Albion's council members were involved in her arrest at all. They voted to prosecute her. Plaintiff does not allege that they ordered her arrest.[3] Instead, Plaintiff alleges that Detective Wygant sought an arrest warrant after City Attorney Harkness filed a criminal complaint against Plaintiff. (Compl. ¶ 550.) Unlike a city council, a police detective typically does not set policy for a municipality; thus, there is nothing in the complaint linking the arrest to an official policy of retaliation by the city. *Lozman* only applies to "official municipal policies of retaliation." *Novak v. City of Pharma*, 923 F.3d 421, 429 (6th Cir. 2019). Accordingly, it does not apply here.

Moreover, Plaintiff alleges that Wygant based his warrant request on her "get rid of him" statement and similar messages to the city manager. (*Id.* ¶¶ 551-54.) Like the decision to prosecute Plaintiff, that request did not target Plaintiff's protected speech. (*See* 12/4/2023 Op. 16-17, ECF No. 52.) Nothing in the complaint suggests that Wygant's request was motivated by Plaintiff's

---
[3] A prosecution does not necessarily require an arrest.

protected conduct. Thus, even if *Lozman* applies, Plaintiff's complaint fails to establish a causal connection between her arrest and any protected conduct.

Plaintiff also relies on a "narrow" exception to the probable cause rule, which applies "where officers have probable cause to make arrests, but generally exercise their discretion not to do so." *Nieves*, 130 S.Ct. at 1727. In other words, the "no-probable-cause" requirement for retaliatory arrest claims should not apply when "a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Id.*

Here, Plaintiff contends that other city officials who violated the city charter were not arrested. In support of this contention, she relies upon a memorandum that she apparently sent to the city council in March 2020, in which she asserted that Defendant Williamson, a council member, shared "closed session information" with his mother-in-law, in violation of the charter. (3/16/2020 Brown Mem., ECF No. 59-2, PageID.614.) In the same memorandum, Plaintiff asserted that Defendant Atchison, the city mayor, appointed individuals to serve on city boards and commissions without disclosing their financial contributions to his campaign and repeatedly met with city staff in the cemetery without permission from the city manager. (*Id.*) She contends that Williamson's and Atchison's conduct also violated the city charter, yet neither of them was arrested (or prosecuted) for it.

The facts asserted in Plaintiff's memorandum about Williamson and Atchison are not part of her complaint. As such, they are not relevant to Defendants' motion to dismiss or to Plaintiff's motion for reconsideration.[4] In any case, accepting Plaintiff's assertions as true, the *Nieves*

---

[4] Plaintiff offers no support for her assertion that her memorandum to the city council is a public record on which the Court can rely at the motion-to-dismiss stage. The memorandum is not an official record or report of the conduct of Williamson or Atchison; it is merely a document created by Plaintiff containing her unsupported accusations.

exception does not apply because Williamson and Atchison were not similarly situated with Plaintiff. They did not engage in the same conduct as Plaintiff (i.e., telling the city manager to terminate a city employee). Also, she does not contend that their conduct was reported to law enforcement in a criminal complaint and police report or that the city council voted to prosecute them for it. (*See* Compl. ¶¶ 549-50.) Thus, her circumstances were different from theirs.

Finally, Plaintiff relies upon an amicus brief filed in an appeal from *Gonzalez v. Trevino*, 42 F.4th 487 (5th Cir. 2022). In *Gonzalez*, the Court of Appeals for the Fifth Circuit held that the plaintiff could not rely upon *Lozman* to support her retaliatory arrest claim because that decision is "limited to *Monell* claims" and she did not assert such a claim regarding her arrest. *Id.* at 494. Also, it held that the *Nieves* exception did not apply because the plaintiff did not offer objective evidence that others who committed her offense were not prosecuted. *Id.* at 492. Consequently, the usual rule applied: because there was probable cause for the plaintiff's arrest, her retaliatory arrest claim failed. *Id.* at 493. *Gonzalez* is consistent with this Court's decision.

Plaintiff does not explain how the amicus brief supports her motion. She simply asserts that "amici have focused on accountability." (Pl.'s Br. in Supp. of Mot. for Reconsid. 11, ECF No. 59.) The brief appears to argue that probable cause should only bar claims of retaliatory arrest when the arrest was based on a split-second decision by the arresting officer. However, the Court must apply the law as it stands. The Court is not persuaded that *Lozman* or the exception in *Nieves* apply here. Accordingly, the Court will deny the motion for reconsideration.

### III. SUMMARY JUDGMENT

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of

7

law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Summary judgment is not an opportunity for the Court to resolve factual disputes. *Id.* at 249.  The Court "must shy away from weighing the evidence and instead view all the facts in the light most favorable to the nonmoving party and draw all justifiable inferences in their favor." *Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 410 (6th Cir. 2021).

The remaining claims are against the City of Albion, which is liable under 42 U.S.C. § 1983 only if Plaintiff can show that it had a "'policy or custom' that caused the violation of [her] rights." *Wright v. City of Euclid*, 962 F.3d 852, 880 (6th Cir. 2020) (quoting *Monell*, 436 U.S. at 690). Defendants argue that the city is not liable because Plaintiff has not shown a violation of her constitutional rights.  "There can be no liability under *Monell* without an underlying constitutional violation."  *Price v. Montgomery Cnty.*, 72 F.4th 711, 726 (6th Cir. 2023) (quoting *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014)).

In response, Plaintiff apparently contends that her rights were violated when the city council voted to prosecute her for telling the city manager to "get rid of" Kipp.  In particular, she contends that the prosecution violated her rights under the First Amendment and the Due Process Clause of the Fourteenth Amendment because the city's charter was unconstitutionally overbroad and vague.  The Court disagrees.

Section 5.8(a) of the City charter provides:

> The council members shall not individually direct the appointment or removal of any administrative officer or employee of the city and shall deal with the administrative service of the city only through the city manager, as to officers and employees made responsible to him.

(*See* 12/4/2023 Op. 4, ECF No. 52.)

Under the Supreme Court's "First Amendment overbreadth doctrine, a statute is facially invalid if it prohibits a substantial amount of protected speech." *United States v. Williams*, 553

8

U.S. 285, 292 (2008). "[A] statute's overbreadth [must] be *substantial*, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep." *Id.* Plaintiff makes no attempt to examine the charter under this standard, effectively waiving her argument. *See Barany-Snyder v. Weiner*, 539 F.3d 327, 331 (6th Cir. 2008) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997))). Indeed, to the extent the charter prohibits any protected speech at all, it prohibits only a limited kind of speech by certain public employees. Thus, the Court is not persuaded that the charter provision is unconstitutionally overbroad.

As to vagueness, Plaintiff notes that the charter does not have definitions. Also, there is no indication in chapter 5 of the charter that a violation of chapter 5 could subject the violator to criminal penalties. "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). However, definitions of words are not always necessary. "When the common meaning of a word provides adequate notice of the prohibited conduct, the statute's failure to define the term will not render the statute void for vagueness." *Platt v. Bd. of Comm'rs on Grievances & Discipline of Ohio Sup. Ct.*, 894 F.3d 235, 247 (6th Cir. 2018) (quoting *United States v. Hollern*, 366 F. App'x 609, 612 (6th Cir. 2010)). Here, section 5.8(a) prohibited council members from, among other things, individually (rather than as part of the city council) ordering another city official to terminate a city employee. In other words, the common meaning of that section's terms is sufficiently clear. It uses language that "an ordinary person exercising ordinary common sense can sufficiently understand and comply with, without sacrifice to the public interest." *Arnett v.*

9

*Kennedy*, 416 U.S. 134, 159 (1974) (quoting *U.S. Civil Serv. Comm'n v. Nat'l Assoc. of Letter Carriers, AFL-CIO*, 413 U.S. 458, 579 (1973)).

Plaintiff contends there is ambiguity in what it means to "deal with the administrative service of the city only through the city manager, as to officers and employees made responsible to him"; however, that provision merely clarifies that council members should bring concerns about city employees to the city manager. Regardless, Plaintiff was not prosecuted for violating that directive, so any ambiguity therein is irrelevant.

In addition, the fact that the city charter provides for criminal penalties in a different section than the prohibition does not make it unconstitutionally vague. Plaintiff provides no support for her argument on this point. Plaintiff's reliance on *Lambert v. California*, 355 U.S. 225 (1957) is misplaced. There, the plaintiff was punished for visiting Los Angeles without registering as a convicted felon. *Id.* at 226. The Court held that she could not be convicted without knowledge of the duty to register and without proof of the "probability of such knowledge." *Id.* at 229. Of course, ignorance of the law generally is not an excuse. *Id.* at 228. However, the mere failure to register is "unlike the *commission of acts*, or the failure to act under circumstances that should alert the doer to the consequences of his deed." *Id.* (emphasis added). In contrast, Plaintiff's case involves the commission of an act, not a "wholly passive" failure to act. *See id*. Thus, *Lambert* does not apply. In summary, the Court is not persuaded that section 5.8(a) of the city charter is unconstitutionally overbroad or vague.

Finally, Plaintiff contends that the City failed to train its employees with regard to First Amendment and Fourth Amendment rights. Defendants rightly note that this claim cannot succeed without an underlying constitutional violation. Plaintiff did not suffer a violation of her First Amendment rights and her Fourth Amendment claim is untimely. (*See* 12/4/2023 Op. 11, 12-17.)

10

A *Monell* claim based on a failure-to-train theory requires, among other things, a deprivation of constitutional rights. *See Siefert v. Hamilton Cnty.*, 951 F.3d 753, 767 (6th Cir. 2020). Without such a deprivation, there is no claim. *Scott v. Clay Cnty.*, 205 F.3d 867, 879 (6th Cir. 2000); *Gomez v. City of Memphis*, Nos. 21-5473/5644, 2023 WL 7287100, at *7 (6th Cir. Aug. 4, 2023) ("Absent a constitutional violation, there can be no municipal liability."). Accordingly, the Court will grant summary judgment and dismiss Plaintiff's *Monell* claim in Count III.[5]

## IV. CONCLUSION

For the foregoing reasons, the Court will deny Plaintiff's motion for reconsideration and grant Defendants' motion for summary judgment. Defendants' motion resolves the remaining claims in the case, so the Court will enter a judgment dismissing the case.

An order and judgment will enter consistent with this Opinion.

Dated: May 15, 2024          /s/ Hala Y. Jarbou
                             HALA Y. JARBOU
                             CHIEF UNITED STATES DISTRICT JUDGE

---

[5] In passing, Plaintiff contends that the Court should allow time to take further discovery under Rule 56(d)(2) of the Federal Rules of Civil Procedure. That rule requires a nonmovant to show by "affidavit or declaration that, for specified reasons, [she] cannot present facts essential to justify [her] opposition [to a motion for summary judgment.]" Fed. R. Civ. P. 56(d)(2). If that showing is made, the Court can allow time for discovery. Plaintiff has not provided the requisite affidavit or declaration and it is not clear what reasons or facts would justify her request.

11